AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

Southern _____ **DISTRICT OF** New York _____

Jennifer Lupo

ECF CASE

## SUMMONS IN A CIVIL CASE

V.

Gutman, Mintz, Baker & Sonnenfeldt
Donna L. Denton, Esq., Gary D. Friedman, Esq.,
Park City LLC, Penson Corp., Penson Development, Inc

CASE NUMBER:

**05  CV  2589**

**JUDGE KOELTL**

**TO:** (Name and address of defendant)

Gutman, Mintz, et al. 813 Jericho Tpke. New Hyde Park, NY 11040
Donna L. Denton, Esq. 813 Jericho Tpke. New Hyde Park, NY 11040
Gary D. Friedman, Esq. 813 Jericho Tpke. New Hyde Park, NY 11040
Park City LLC 551 5th Ave NY, NY 10176
Penson Corp. 915 E. 179th St. Bronx NY 10460   Penson Dev. Inc 915 E. 179th St Bronx, NY 10460

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Anthony Q Fletcher P.C.
160 Claremont Avenue #3B
N.Y., N.Y. 10027
(212) 865-0800

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

MAR - 4 2005

CLERK

_Jessica Doss_

DATE

(BY) DEPUTY CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JENNIFER LUPO

                               Plaintiff,

      -Against-

GUTMAN, MINTZ, BAKER & SONNENFELDT, P.C.,
PARK CITY LLC, PENSON CORPORATION,
PENSON DEVELOPMENT, INC.,
DONNA L. DENTON, ESQ., Individually,
GARY D. FRIEDMAN, ESQ., Individually,

                           Defendant(s).

-------------------------------------------------------------------X

**JUDGE KOELTL**

\_\_\_ Civ. \_\_\_

05 Civ. 2589

**COMPLAINT**

RECEIVED
MAR 0 4 2005
U.S.D.C. S.D.N.Y.
CASHIERS

## I. INTRODUCTION

1.  This action arises from Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA") and the New York GBL § 349, et seq. (hereinafter "GBL") which prohibit, *inter alia*, abusive, deceptive and unfair debt collection and trade practices.

## II. JURISDICTION

2.  Subject matter jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 1331 & 1337 and 15 U.S.C. § 1692K(d). 28 U.S.C. §1367 vests with this Court subject matter jurisdiction to hear the pendent state law claims.

3.  Venue is proper in this District because (i) Plaintiff is domiciled within this District; and (ii) Defendants' collection demand letters were received by Plaintiff within this District.

## III. PARTIES

4.  Plaintiff, JENNIFER LUPO, is a natural person residing at 77 Bleecker Street, Apt. 112, in the City, County and State of New York 10012.

5.  Upon information and belief, defendant, GUTMAN, MINTZ, BAKER & SONNENFELDT, P.C. (hereinafter "GUTMAN") is  a New York professional corporation with its principal place of business located at 813 Jericho Turnpike, New Hyde Park, New York 11040. Defendant GUTMAN is a law firm that is regularly involved in the collection of personal consumer debts (hereinafter "Debts").   Defendant GUTMAN regularly uses the United States mail and the telephone as methods of collecting Debts.

6. Upon information and belief, defendant, DONNA L. DENTON, ESQ., (hereinafter "DENTON") is an attorney duly admitted to practice law in the state of New York, is associated with GUTMAN, and has her principal place of business at 813 Jericho Turnpike, New Hyde Park, New York 11040. Defendant DENTON has been an attorney since 1989 and is regularly involved in the collection of Debts.   Defendant DENTON regularly uses the United States mail and the telephone as methods of collecting Debts.

7. Upon information and belief, defendant, GARY D. FRIEDMAN, ESQ. (hereinafter "FRIEDMAN") is an attorney duly admitted to practice law in the state of New York, a member of the law firm of GUTMAN, and has his principal place of business at 813 Jericho Turnpike, New Hyde Park, New York 11040. Defendant FRIEDMAN has been an attorney since 1986 and is regularly involved in the collection of Debts.   Defendant FRIEDMAN regularly uses the United States mail and the telephone as methods of collecting Debts.

8. Upon information and belief, defendant, PARK CITY LLC (hereinafter "PARK CITY ") is a Delaware limited liability company, authorized to do business in New York state, with a place of business located at 551 5th Avenue, 34th Floor, New York, NY 10176. PARK CITY is the owner or owner's agent of the residential apartment building located at 85 Livingston Street Brooklyn, New York 11201. PARK CITY is involved in the collection of Debts.   PARK CITY and/or its agents regularly use the United States mail and the telephone as methods of collecting Debts.

9. Upon information and belief, defendant, PENSON CORPORATION (hereinafter "PENSON 1") is a New York corporation with its principal place of business located at 915 East 179th Street, Bronx, New York 10460-2848. PENSON 1 is the managing agent of the residential apartment building located at 85 Livingston Street Brooklyn, New York 11201.   PENSON 1 is regularly involved in the collection of Debts. PENSON 1 and/or its agents regularly use the United States mail and the telephone as methods of collecting Debts.

10. Upon information and belief, defendant, PENSON DEVELOPMENT, INC. (hereinafter "PENSON 2") is a New York corporation with its principal place of business located at 915 East 179th Street, Bronx, New York 10460-2848. PENSON 2 is the managing agent of the residential apartment building located at 85 Livingston Street Brooklyn, New York 11201.   PENSON 2 is regularly involved in the collection of Debts. PENSON 2 and/or its agents regularly use the United States mail and the telephone as methods of collecting Debts.

## IV. JURY DEMAND

11. Plaintiff demands a jury trial on all matters.

## V. FACTUAL ALLEGATIONS

12. On or before December 7, 2004, William Lupo executed a lease for a rent stabilized apartment located at the Robert Livingston, 85 Livingston Street Apt. 8E, Brooklyn, New York 11201. Defendant PARK CITY is listed on the lease as the owner/owner's agent of the building. PENSON 1 and/or PENSON 2 are the managing agent(s) of the building. (Annexed hereto as Exhibit "A" is the lease agreement between PARK CITY and William Lupo).

13. Plaintiff is not a party to the lease. Plaintiff did not assume any obligations of William Lupo's under the lease to pay rent.

14. On December 7, 2004, Plaintiff's father, William Lupo, died suddenly. (Annexed hereto as Exhibit "B" is William Lupo's death certificate).

15. Plaintiff is not the executor, administrator or attorney-in-fact of William Lupo or the Estate of William Lupo.

16. The FDCPA defines a "consumer debt" as an "obligation… to pay money arising out of a transaction…that involves…personal, family, or household purposes." 15 U.S.C. §1692a(5). The cases interpreting the FDCPA have defined rent arrears as Debt.

17. Attorney's regularly engaged in sending letters or other communications to collect Debts are 'debt collectors' if the letters or other communications they send convey information regarding a "debt" to another. 15 U.S.C. §1692a(2).

18. Section 1692c(b) states "…a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency (if otherwise permitted by law), the creditor, the attorney of the creditor, or the attorney of the debt collector." Plaintiff does not fall within any of these categories and is an unauthorized person under the FDCPA.

19. On or about February 4, 2005, DENTON and GUTMAN, through the use of the United States mail sent two letters to Plaintiff demanding payment of alleged rent arrearages of William Lupo. The letters read "[p]lease make arrangements to remit the arrears to the Management Company, [PENSON 1/PENSON2], 915 East 179th Street, Bronx, NY 10460 within ten (10) days of receipt of this Notice…Failure to pay the arrears will result in legal action against the Estate of William Lupo and/or you as the next-of-kin." Upon information and belief, PENSON 1/PENSON2 and PARK CITY authorized GUTMAN, DENTON and FRIEDMAN to collect the alleged Debt. (Annexed hereto as Exhibit "C" are two letters from DENTON and GUTMAN).

20. By letter dated February 9, 2005, Plaintiff responded to DENTON and GUTMAN informing them of her belief of FDCPA and New York Code of Professional Responsibility (hereinafter "CODE") violations. <u>See generally</u>, DR 7-102 of the New York Code of Professional Responsibility (making it a disciplinary violation to make a false statement of law or fact). (Annexed hereto as Exhibit "D" is Plaintiff's letter to DENTON and GUTMAN).

21. On February 10, 2005, FRIEDMAN and GUTMAN telephoned Plaintiff at her office to inquire regarding the alleged rent arrears of   William Lupo. FRIEDMAN also sent a letter to Plaintiff by facsimile on February 10, 2005. FRIEDMAN was hostile, harassing and abusive towards Plaintiff during their telephone conversations. (Annexed hereto as Exhibit "E" is FRIEDMAN and GUTMAN's second letter to Plaintiff).

22. On February 14th and 16th 2005 FRIEDMAN and GUTMAN telephoned Plaintiff to discuss William Lupo's Debt.

23. Defendants did not provide Plaintiff with their proof that they had authority to disclose William Lupo's alleged debts with Plaintiff, an unauthorized person.

24. Upon information and belief, it is the policy and practice of GUTMAN, FRIEDMAN, and DENTON to use the United States mail and the telephone to send debt collection letters that falsely state that eminent legal action will be undertaken unless the alleged Debt is satisfied within ten (10) days from the date of the letter. (Exhibit "C").

25. PARK CITY, PENSON 1 and PENSON 2 are either the owners of the building located at 85 Livingston Street Brooklyn New York 11201 where William Lupo resided at the time of his untimely death or they are the owners' agents. PARK CITY, PENSON 1 and PENSON 2 authorized GUTMAN, DENTON and FRIEDMAN to engage in outrageous and abusive collection practices in violation of the FDCPA and the GBL.

26. GUTMAN was a named defendant in <u>Travieso v. Gutman, Mintz, Baker & Sonenfeldt, P.C.</u>, 1995 WL 704778 (EDNY 1995), wherein the Court held that rent arrears are debts within the meaning of the FDCPA and that attorneys regularly engaged in the collection of rent arrears on behalf of landlord/clients are debt collectors under the FDCPA. (Annexed hereto as Exhibit "E" is a copy of <u>Travieso v. Gutman, Mintz, Baker & Sonenfeldt, P.C.</u>).

27. Upon information and belief, GUTMAN and DENTON knew that they are debt collectors within the meaning of the FDCPA and that the letter they mailed to Plaintiff was an attempt to collect an alleged Debt of William Lupo.  GUTMAN and DENTON knew at the time they sent Plaintiff the first letter that §1692c(b) restricts a debt collector from communicating with the daughter of an alleged debtor.

28. Upon information and belief, GUTMAN and DENTON knew that Plaintiff was not a party to the lease between PARK CITY and William Lupo.

29. Upon information and belief, GUTMAN and DENTON knew at the time they mailed the first letter to Plaintiff that she had no legal or other obligation to satisfy the alleged debts of William Lupo.

30. Upon information and belief, GUTMAN and DENTON made false and misleading statements to Plaintiff in violation of the FDCPA, New York GBL § 349, and DR 7-102 of the CODE which bars an attorney admitted to the New York bar from making false and misleading statements of law or fact.

31. Upon information and belief, the false and misleading statements made by defendants are that: (i) Plaintiff is legally or otherwise responsible for the alleged rent arrears of William Lupo; (ii) Plaintiff had ten (10) days to make payment to defendant PARK CITY, PENSON 1 and PENSON 2; and (iii) litigation would be commenced against Plaintiff, as the next-of-kin of William Lupo, if she did not make payment in accordance with the terms of the letter.

32. Conspicuously missing from the GUTMAN/DENTON letter is a statement that the letter constituted an attempt on the part of defendants to collect a Debt.

33. The GUTMAN/DENTON letter violates the FDCPA validation/dispute notice requirement, which requires a statement from a creditor that the debt's validity will be assumed correct unless disputed within (30) days from the date of receipt of the letter. The GUTMAN/DENTON letter does not contain the aforementioned FDCPA validation/dispute notice. The GUTMAN/DENTON letter further states that arrears were to be remitted within (10) days of receipt of the letter which is simply a false statement of law.

34. The GUTMAN/DENTON letter further violates the FDCPA validation/dispute notice requirements by threatening Plaintiff with legal action prior to the thirty (30) day debt validation/dispute period, and further threatens legal action that could never be commenced against Plaintiff absent a legal obligation on her part for the alleged Debt.

35. The GUTMAN/DENTON letter creates a false sense of urgency and contradicts the prohibition against using false and deceptive means while attempting to collect a debt in violation of the FDCPA and the GBL.

36. The GUTMAN/DENTON letter contains in the reference line the caption "Park City, LLC v. William Lupo/Deceased" which indicated to Plaintiff that the matter was in litigation. The matter is not in litigation rendering the letter's reference line false and misleading, and in violation of § 1692e(13) and the GBL.

## VI. CLAIMS FOR RELIEF

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST THE DEFENDANTS SOUNDING IN VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.

37. Plaintiff repeats, reiterates and realleges paragraphs 1 through 36 as if more fully stated herein.

38. Defendants violated the following provisions of the FDCPA:

   a. 15 U.S.C. § 1692 (2)(b): by falsely misrepresenting compensation to which they are not entitled to from Plaintiff.

   b. 15 U.S.C. § 1692c(b): by communicating with Plaintiff, who is an unauthorized third party, in an attempt to collect an alleged Debt of William Lupo, Plaintiff's deceased father.

   c. 15 U.S.C. § 1692d: by using collection tactics that are designed to harass, oppress, and abuse the Plaintiff, *to wit*, threatening plaintiff with litigation if she did not pay her deceased father's alleged debt.

   d. 15 U.S.C. § 1692e: by using false, deceptive and misleading statements in the attempt to collect the alleged debt of William Lupo, which is neither due nor owing by Plaintiff, *to wit*, (i) threatening plaintiff, as the next-of-kin of William Lupo with litigation against her if she did not personally pay her deceased father's alleged Debt; and (ii) by threatening Plaintiff with legal action during the thirty (30) day validation/dispute period; and by contacting Plaintiff, an unauthorized person, regarding her father's alleged Debt.

   e. 15 U.S.C. § 1692e(2)(A):  by falsely representing the character and legal status of an alleged Debt, *to wit*, referencing the matter in the correspondence as "Park City LLC v. William Lupo/Deceased".

   f. 15 U.S.C. § 1692e(5): by threatening Plaintiff with legal action during the thirty (30) day validation/dispute period and by threatening Plaintiff, an unauthorized person, with legal action that can not legally be undertaken.

   g. 15 U.S.C. § 1692e(13):  by falsely misrepresenting or implying that the matter is in litigation, *to wit*, referencing the matter in the correspondence as "Park City LLC v. William Lupo/Deceased".

   h. 15 U.S.C. § 1692g: by failing to effectively advise a consumer of their thirty (30) day right to verify and/or dispute an alleged debt pursuant to

the FDCPA, *to wit*, demanding payment of the alleged Debt within ten (10) days from the date of the letter.

39. For the foregoing reasons, an award of actual damages, statutory damages, punitive damages, costs and attorney's fees is warranted in this action.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE DEFENDANTS SOUNDING IN VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §349

40. Plaintiff repeats, reiterates and realleges paragraphs 1 through 39 as if more fully stated herein.

41. Section 349 of the GBL, entitled, *Deceptive acts and practices unlawful*, reads:

> (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful. (emphasis added).

The practice of law is a service within the meaning of the GBL. Debt collection is a service within the meaning of the GBL.

42. Section 349(h) states:

> (a) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

43. The defendants' written and verbal statements to Plaintiff, an unauthorized person, are an attempt to collect a Debt from William Lupo and constitute false and deceptive trade practices within the meaning of the GBL because the Debt is not one owed by Plaintiff, and defendants' statements misstate New York Law, *to wit*, that Plaintiff as next-of-kin of William Lupo is liable for his alleged Debt and that legal action would be taken against her within ten (10) days after the date of the letter if she did not make payment in accordance with the terms of the letter.

44. The Defendants' were named defendants in Travieso v. Gutman, Mintz, Baker & Sonenfeldt, P.C. (Exhibit "E").

45. Ten (10) years has passed since <u>Travieso</u> was handed down. Defendants are well aware of their obligations as debt collectors and chose to ignore them by writing to and telephoning an unauthorized third party and threatening her with litigation for a Debt that is not her debt or responsibility. By doing so, defendants have demonstrated egregious, willful and malicious misconduct in violation of the GBL. (Exhibit "E").

46. For the foregoing reasons, an award of actual damages, statutory damages, punitive damages, costs and attorney fees is warranted in this action.

47. Punitive damages are warranted in order to punish the Defendants for their continued pattern and practice of violating state and federal debt collection laws.

48. The GBL authorizes the Court to grant injunctive relief.

49. A permanent injunction should issue barring the defendants from engaging in false and deceptive trade practices in the collection of consumer Debt *to wit*: rent arrears, to protect all consumers from like unlawful conduct.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor as follows:

        (A) Actual damages pursuant to 15 U.S.C. § 1692k.

        (B) Statutory damages pursuant to 15 U.S.C. § 1692k.

        (C) Punitive damages pursuant to 15 U.S.C. § 1692k.

        (D) A permanent injunction pursuant to 15 U.S.C. § 1692k.

        (E) Attorney fees, costs and expenses pursuant to 15 U.S.C. § 1692k.

        (F) Actual damages pursuant to GBL § 349.

        (G) Statutory damages pursuant to GBL § 349.

        (H) Punitive damages pursuant to GBL § 349.

        (I) A permanent injunction pursuant to GBL § 349.

        (J) Attorney fees, costs and expenses pursuant to GBL § 349.

        (K) Such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        February 28, 2005

                                        Yours, etc.

                                        ANTHONY Q. FLETCHER P.C.

                                        Anthony Q. Fletcher, Esq. (AQF-5013)
                                        Attorneys for Plaintiff
                                        160 Claremont Avenue, Suite 3B
                                        New York, New York 10027
                                        (212) 865-0800

To:     Gutman, Mintz, Baker & Sonnenfeldt, P.C.
        Defendant
        813 Jericho Turnpike
        New Hyde Park, New York 11040

        Donna L. Denton, Esq.
        Defendant
        c/o Gutman, Mintz, Baker & Sonnenfeldt, P.C.
        813 Jericho Turnpike
        New Hyde Park, New York 11040

        Gary D. Friedman, Esq.
        Defendant
        c/o Gutman, Mintz, Baker & Sonnenfeldt, P.C.
        813 Jericho Turnpike
        New Hyde Park, New York 11040

        Park City LLC
        Defendant
        551 5th Avenue
        34th Floor
        New York, NY 10176

        Penson Corporation
        Defendant
        915 East 179th Street
        Bronx, New York 10460-2848

        Penson Development, Inc.
        Defendant
        915 East 179th Street
        Bronx, New York 10460-2848

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JENNIFER LUPO

                              Plaintiff,              05 Civ. 2589

     -Against-

GUTMAN, MINTZ, BAKER & SONNENFELDT, P.C.,
PARK CITY LLC, PENSON CORPORATION,
PENSON DEVELOPMENT, INC.,
DONNA L. DENTON, ESQ., Individually,
GARY D. FRIEDMAN, ESQ., Individually,

                            Defendant(s).

-------------------------------------------------------------------X


---

### SUMMONS AND COMPLAINT

---

                             Yours, etc.

                             ANTHONY Q. FLETCHER P.C.

                             By:
                             Anthony Q. Fletcher, Esq. (AQF-5013)
                             Attorneys for Plaintiff
                             160 Claremont Avenue, Suite 3B
                             New York, New York 10027
                             (212) 865-0800

To:         Gutman, Mintz, Baker & Sonnenfeldt, P.C.
             Defendants

             Donna L. Denton, Esq.
             Defendant

             Gary D. Friedman, Esq.
             Defendant

             Park City LLC
             Defendant

             Penson Corporation
             Defendant

             Penson Development, Inc.
             Defendant

**EXHIBIT "A"**

# RENEWAL LEASE FORM

**THIS IS A NOTICE FOR RENEWAL OF LEASE AND RENEWAL LEASE FORM PROMULGATED PURSUANT TO SECTION 2523.5(a) OF THE NEW YORK CITY RENT STABILIZATION CODE. ALL COPIES OF THIS FORM MUST BE SIGNED BELOW AND RETURNED TO YOUR LANDLORD WITHIN 60 DAYS.**

DATE __3/15/2002__

Tenant's Name and Address:
WILLIAM LUPO
85 LIVINGSTON STREET     8E
BROOKLYN NY        11201

Owner's/Agent Name & Address
PARK CITY LLC
ROBERT LIVINGSTON
915 EAST 179TH ST. BRONX, N.Y. 10460

**1. The owner hereby notifies you that your lease will expire on:**   6   30   2002
318-056-6                                       MONTH   DAY   YEAR

## PART A - OFFER TO TENANT TO RENEW

**2. You may renew this lease for one or two years, at your option, as follows:**

| Col. a Renewal Term | Col. b Legal Rent on Sept. 30th Preceding Commencement Date Of This Renewal Lease | Col. c Authorized Applicable Guideline Increase (If unknown, check box ☐ and see below)* | Col. d Applicable Guideline Supplement, If Any | Col. e Lawful Rent Increase Adj. If Any, Eff. After Sept. 30th Indicated in Col. b | Col. f Separate charge, if any (Specify under item 4 below) | Col. g New Rent (If lower rent to be charged check box ☐ and see 5 below)** |
|---|---|---|---|---|---|---|
| ☐ 1 Year | $ 653.23 | ( 4.0 %)$ 26.13 | $ .00 | $ .00 | $ .00 | $ 679.36 |
| ☒ 2 Year | SAME AS ABOVE | ( 6.0 %)$ 39.19 | $ .00 | $ .00 | $ .00 | $ 692.42 |

*If applicable guideline rate is unknown at time offer is made, check box in column c and enter current guideline which will be subject to adjustment when new rates are ordered.
**The rent provided for in this renewal lease may be increased or decreased pursuant to an order of the Division of Housing and Community Renewal (DHCR) or Rent Guidelines Board (RGB)

**3. Security Deposit:**
Current Deposit: $ 653.23 Additional Deposit Required--1 year lease: $ 26.13 --2 year lease: $ 39.19
**4. Specify separate charges if applicable:**
Air Conditioner--Electricity Charge:$ _____/mo.-- Unit Charge: $ _____/mo.
421 a (2.2%):$ _____/mo. Other (Describe): _____ $ _____/mo.
**5. Lower rent to be charged, if any. $** _____ Agreement attached:  ☐ yes  ☐ no
**6. This renewal lease shall commence on** 7 1 2002 ,which shall not be less than 90 days nor more than 150
                        MONTH DAY YEAR
days from the date of mailing or personal delivery of this Renewal Lease Form. This renewal lease shall terminate on
6 30 2003 **1 year lease or** 6 30 2004 **2 year lease.**
MONTH DAY YEAR            MONTH DAY YEAR
**7. This renewal lease is based on the same terms and conditions as your expiring lease, except that**_____ **lawful**
provisions attached and _1_ written agreements between owner and tenant attached have been added. (Indicate in the blank spaces as applicable, the number of additional provisions or written agreements attached).

**This form becomes a binding lease renewal when signed by the owner below and returned to the tenant. A rider setting forth the rights and obligations of tenants and landlords under the Rent Stabilization Law must be attached to this lease when signed by the owner and returned to the tenant (Los Derechos y responsabilidades de inquilinos y caseros estan disponible en espanol).**

## PART B - TENANT'S RESPONSE TO OWNER

*Tenant: Check and complete where indicated one of the two responses below after reading instructions on reverse side. Then date and sign your response below. You must return this Renewal Lease Form to the owner in person or by regular mail, within 60 days of the date this Notice was served upon you by the owner. Your failure to do so may be grounds for the commencement of an action by the owner to evict you from your apartment.*

☑ **I (we) the undersigned tenant(s), agree to enter into a** _2_ **year renewal lease at a monthly rent of**
$ 692.42 This renewal lease is based on the same terms and conditions as my (our) expiring lease, and further attached lawful provisions and attached written agreements, if any (see item 7 under PART A above).

☐ I (we) will not renew my (our) lease and I (we) intend to vacate the apartment on the expiration date of the present lease set forth above.

Dated 4/1/'02   Tenant's Signature(s): X _William Lupo_   X _____
Dated 4/1/'02   Owner's Signature: X _William Lupo_   X _____
RTP-8 (1/01)                  PARK CITY LLC                  318-056

## INSTRUCTIONS TO OWNER

At least two copies of this completed Renewal Lease Form must be mailed to the tenant in occupancy or personally delivered not more than 150 [120] days and not less than 120 [90] days prior to the end of the tenant's lease term.  The owner shall also make this Form available in Spanish upon request of the tenant.

If the owner offers a Renewal Lease less than 120 [90] days prior to the expiration of the existing lease, the lease term selected by the tenant shall begin at the tenant's option either (1) on the date a renewal lease would have begun had a timely offer been made or (2) on the first rent payment date occurring no less than 120 [90] days after the date that the owner does offer the lease to the tenant.  The guidelines rate applicable for such lease shall be no greater than the rate in effect on the commencement date of the lease for which a timely offer should have been made, and the increased rental shall not begin before the first rent payment date occurring no less than 120 [90] days after such offer is made.

The owner must fully complete PART A on the reverse side of this Form explaining how the new rent has been computed.  Any rent increase must not exceed the applicable Rent Guidelines Board adjustment(s) plus other adjustments authorized by the Rent Stabilization Code.

Failure to file a current registration for this housing accommodation with DHCR bars the collection of any guidelines increase after such registration should have been filed.  This sanction is lifted prospectively upon the filing of a proper registration.

This Renewal Lease must be offered on the same terms and conditions as the expiring lease, except for such additional provisions as are permitted by law or the Rent Stabilization Code which must be set forth by the owner and attached to this Form.  If there are any additional lawful agreements between the owner and tenant, a copy signed by both parties must also be attached to this Form.

The tenant must return to the owner all copies of this Form, completed and signed by the tenant in PART B on the reverse side of this Form.

The owner must furnish the tenant with a fully executed copy of this Renewal Lease Form bearing the tenant's and owner's signatures in PART B, and a copy of the DHCR Lease Rights Rider, within 30 days of the owner's receipt of this Form signed by the tenant.  The owner shall also make the Lease Right Rider available in Spanish upon request of the tenant.   Service of this fully executed Form, upon the tenant, constitutes a binding renewal lease. If the owner fails to furnish the tenant with a fully executed copy of this Form within 30 days of receipt of the Form signed by the tenant, the tenant shall continue to have rights afforded by the Rent Stabilization Law and Code.  In addition, the owner may not collect a rent increase from the tenant, and will be barred from commencing any action or proceeding against the tenant based upon non-renewal of lease.

## INSTRUCTIONS TO TENANT

If you wish to accept this offer to renew your lease, you must complete and sign this Renewal Lease Form in the space provided in PART B on the reverse side of this Form, and you must return all copies of the signed Lease Form to the owner in person or by regular mail within 60 days of the date this Form was served upon you.  You may wish to make a copy for your own records.  *If you are the recipient of a Senior Citizen Rent Increase Exemption, you must select a one- or two-year lease, or you will lose this exemption.*

Before you complete and sign PART B and return this Renewal Lease Form, be sure to check the number of additional lawful provisions and written agreements indicated under item 7 on the reverse side of this Form and that the same number of lawful provisions and written agreements have been attached by the owner to this Form.  Please read all attachments carefully.  If such other lawful provisions appear, they are part of this lease renewal offer and renewal lease.  If there are any lawful agreements between you and the owner, attached copies must be signed by both parties.

If you question the Legal Regulated Rent or the rental adjustments specified on the front of this Renewal Lease Form, ask the owner for an explanation. Or, you may telephone the NYS Division of Housing and Community Renewal (DHCR), Office of Rent Administration, at (718) 739-6400, before the end of the 60-day period from the date this Form was served upon you.

If the owner agrees to a rent which is lower than the legal regulated rent, this lower amount should be entered in item 5 on the reverse side of this Form and a signed copy of the agreement should be attached.  You may not change the content of this Renewal Lease Form without the owner's written consent.

Your acceptance of this offer to renew shall constitute a renewal of the present lease for the term of years and rent accepted, subject to any other lawful changes which appear in writing on the attachments to this Form, and subject also to payment of the new rent and additional security, if any.  Such additional security shall be deposited by the owner in the manner provided for on initial occupancy.

If you do not sign and return this Renewal Lease Form at the new rent (which appears in column "g" of item  5 on reverse side of this Form) in accordance with the instructions, and within the prescribed 60-day period, the owner may have grounds to start proceedings to evict you from your apartment.

You may file a complaint with DHCR, if you have not received a copy of the DHCR Lease Rights Rider with this Renewal Lease Form when signed and returned to you by the owner, or a Spanish version of this Form or the Rider after requesting it from the owner, or, if you do not receive a fully executed copy of this Renewal Lease within 30 days from the owner's receipt of a copy of this Form signed by you.

State of New York
## Division Of Housing and Community Renewal
Office Of Rent Administration/Gertz Plaza
92-31 Union Hall Street
Jamaica, New York 11433

RTP-8

RIDER ATTACHED TO AND FORMING A PART OF LEASE DATED <u>MARCH 15, 2002</u>
BETWEEN <u>THE PENSON CORP.</u>                        , AGENTS FOR LANDLORD, AND
<u>WILLIAM LUPO</u>                        , AS TENANT, FOR
APARTMENT #8E        IN THE BUILDING LOCATED AT
<u>85 LIVINGSTON STREET, BROOKLYN NY   11201</u>

# SMOKE DETECTOR
# ACKNOWLEDGEMENT FORM

I hereby state that there are one or more operational smoke detectors
installed in the apartment in which I reside.

I acknowledge that I will be solely responsible for the maintenance
and repair of the smoke detector(s).

TENANT NAME    WILLIAM LUPO /

ADDRESS        85 LIVINGSTON STREET

               BROOKLYN NY   11201

APT#           8E


_William Lupo_                    DATE  6/16/'02
TENANT SIGNATURE


_____           DATE _____
TENANT SIGNATURE

RIDER ATTACHED TO AND FORMING A PART OF LEASE DATED MARCH 15, 2002
BETWEEN THE PENSON CORP._____, AGENTS FOR LANDLORD, AND
WILLIAM LUPO_____, AS TENANT, FOR
APARTMENT #8E_____ IN THE BUILDING LOCATED AT
85 LIVINGSTON STREET, BROOKLYN NY  11201_____

# WINDOW GUARDS REQUIRED
## LEASE NOTICE TO TENANT

You are required by law to have window guards installed if a child 10 years of age or younger lives in your apartment.

Your landlord is required by law to install window guards in your apartment:

* if you ask him to put in window guards at any time (you need not give a reason)

OR

* if a child 10 years of age or younger lives in your apartment.

It is a violation of law to refuse, interfere with installation, or remove window guards where required.

Upon installation of the Window Guards, the tenant agrees to pay to the landlord a one time charge of $10.00 per window.

CHECK ONE

NO   CHILDREN 10 YEARS OF AGE
OR YOUNGER LIVE IN MY APARTMENT

NO   NO CHILDREN 10 YEARS OR
YOUNGER LIVE IN MY APARTMENT

NO   I WANT WINDOW GUARDS EVEN
THOUGH I HAVE NO CHILDREN
10 YEARS OF AGE OR YOUNGER

_William Lupo_____
TENANT (Print)

_William Lupo_____
TENANT SIGNATURE   (Date)

_85 Livingston St   #8E_____
TENANT'S ADDRESS   (Apt. #)

Return this form to:

THE PENSON CORP._____
      Owner/Manager

PARK CITY LLC
915 EAST 179TH ST._____
      Owner/Manager's Address

FOR FURTHER INFORMATION
CALL: WINDOW FALLS PREVENTION
(212) 676-2137/2140

Rev. 1/96

318-056

**EXHIBIT "B"**

# THE CITY OF NEW YORK
## VITAL RECORDS CERTIFICATE

# DEATH TRANSCRIPT

Certified | Print Death Certificate DEPARTMENT OF HEALTH AND MENTAL HYGIENE

NEW YORK CITY
**CERTIFICATE OF DEATH**

Certificate No. 156-04-052941

NEW YORK CITY
DEPARTMENT OF HEALTH
AND MENTAL HYGIENE
NEW YORK CITY
DEPARTMENT OF HEALTH
AND MENTAL HYGIENE
12/9/2004 12:12 PM

**1. DECEDENT'S LEGAL NAME**

| (First Name) | (Middle Name) | (Last Name) |
|---|---|---|
| William | Edward | Lupo |

156-04-052941

**Place Of Death**

2a. New York City
2b. Borough: Brooklyn

Time of Death: 12/9/2004 12:12 PM

1 ☐ Hospital — ☐ Inpatient ☐ ER/Outpatient ☐ Dead on Arrival
2 ☐ Outpatient
3 ☐ Dead on Arrival

4 ☐ Nursing Home/Long Term Care Facility
5 ☐ Hospice Facility
6 ☑ Decedent's Residence
7 ☐ Other Specify

2d. Name of hospital or other facility (if not facility, street address)
85 Livingston Street

| Date and Time of Death or Found Dead | 3a. (Month) December | (Day) 7 | (Year-yyyy) 2004 | 3b. Time 9:20 ☑ AM ☐ PM | 4. Sex Male | 5. OCME Case No. K-04-06056 |
|---|---|---|---|---|---|---|

**MEDICAL CERTIFICATE OF DEATH** (To be filled in by the OCME)

**6. CAUSE OF DEATH**

**PART I**

a. Immediate cause: Atherosclerotic And Hypertensive Cardiovascular Disease
b. Due to or as a consequence of
c. Due to or as a consequence of

**PART II** Other significant conditions contributing to death but not resulting in the underlying cause given in Part I. Include operation information.
Diabetes Mellitus

| 7a. Injury Date (mm dd yyyy) | 7b. Time ☐ AM ☐ PM | 7c. At Work 1 ☐ Yes 2 ☐ No | 7d. Place of Injury - At home, factory, street etc. |
|---|---|---|---|

7e. Location

7f. How Injury Occurred

7g. If Transportation Injury Specify
☐ Driver/Operator ☐ Pedestrian
☐ Passenger
☐ Other Specify

8. Manner of Death
☐ Pending further study
☑ Natural ☐ Homicide
☐ Accident ☐ Suicide ☐ Undetermined

9. Autopsy
☑ Yes
☐ No Autopsy
Pursuant to Law
☐ No Autopsy

10. On the basis of examination and/or investigation, in my opinion, death occurred due to the causes and manner as stated.

Certifier Signature

Certifier Name (Print) Floriana Persechino
Medical Examiner

M.D. Date Dec 8th, 2004

**PERSONAL PARTICULARS** (To be filled in by Funeral Director or, in case of City Burial, by OCME)

| 11a. Usual Residence State | 11b. County | 11c. City or Town | 11d. Street and Number | Apt. No | ZIP Code | 11e. Inside City Limits? |
|---|---|---|---|---|---|---|
| New York | Kings | Brooklyn | 85 Livingston Street | | | 1 ☐ Yes 2 ☐ No |

| 12. Date of Birth (Month) April | (Day) 12 | (Year-yyyy) 1933 | 13. Age at last birthday (years) 71 | Under 1 Year Months / Days | Under 1 Day Hours / Minutes | 14. Social Security No. 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 |
|---|---|---|---|---|---|---|

| 15a. Usual Occupation (Type of work done during most of working life. Do not use "retired") Attorney | 15b. Kind of business or industry Criminal Law | 16. Aliases or AKAs Big Sonny |
|---|---|---|

| 17. Birthplace (City & State or Foreign Country) Brooklyn New York | 18. Education (Check the box that best describes the highest degree or level of school completed at the time of death) 1 ☐ 8th grade or less; none  2 ☐ 9th-12th grade; no diploma  3 ☐ High school graduate or GED  4 ☐ Some college credit, but no degree  5 ☐ Associate degree (e.g. AA, AS)  6 ☐ Bachelor's degree (e.g., BA, AB, BS)  7 ☐ Master's degree (e.g., MA, MS, MEng, MEd, MSW, MBA)  8 ☐ Doctorate (e.g. PhD, EdD) or  9 ☑ Professional degree (e.g., MD, DDS, DVM, LLB, JD) |
|---|---|

| 19. Ever in U.S. Armed Forces? 1 ☐ Yes 2 ☑ No | 20. Marital Status at Time of Death 1 ☐ Married 2 ☐ Divorced 3 ☐ Married, but separated 4 ☐ Never married 5 ☐ Widowed 6 ☐ Unknown | 21. Surviving Spouse's Name (If wife, name prior to first marriage) (First, Middle, Last) |
|---|---|---|

| 22. Father's Name (First, Middle, Last) Anthony Lupo | 23. Mother's Maiden Name (Prior to first marriage) (First, Middle, Last) Jennie Cali |
|---|---|

| 24a. Informant's Name Jennifer Lupo | 24b. Relationship to Decedent Daughter | 24c. Address (Street and Number) 77 Bleecker Street | Apt. No | City & State New York New York | ZIP Code |
|---|---|---|---|---|---|

| 25a. Method of Disposition 1 ☑ Burial 2 ☐ Cremation 3 ☐ Entombment 4 ☐ City Cemetery 5 ☐ Other Specify | 25b. Place of Disposition (Name of cemetery, crematory, other place) Greenwood Cemetery |
|---|---|

| 25c. Location of Disposition (City & State or Foreign Country) Brooklyn New York | 25d. Date of Disposition (mm dd yyyy) December 11 2004 |
|---|---|

| 26a. Funeral Establishment Raccuglia & Son | 26b. Address (Street and Number) 321-323 Court Street Brooklyn NY | City & State | ZIP Code |
|---|---|---|---|

VR 16 (Rev. 01/03)

This is to certify that the foregoing is a true copy of a record on file in the Department of Health and Mental Hygiene. The Department of Health and Mental Hygiene does not certify to the truth of the statements made thereon, as no inquiry as to the facts has been provided by law.

Steven P. Schwartz, Ph.D., City Registrar

Do not accept this transcript unless it bears the security features listed on the back. Reproduction or alteration of this transcript is prohibited by §3.21 of the New York City Health Code if the purpose is the evasion or violation of any provision of the Health Code or any other law.

DATE ISSUED DEC 9, 2004

DOCUMENT No. U740852

The City of New York

**Look for the following security features before accepting this document:**

- Blue engraved border and seals with raised intaglio printing
- Multi-colored pink-blue-pink background
- Micro printing of the words New York City Department of Health and Mental Hygiene immediately above the bottom border and visible using a magnifying glass
- This watermark in the paper, which will be visible when held to the light:

VR-140 675M (3/04) P.O. No. M410808

NYC
Health
OFFICIAL
VITAL RECORD

**EXHIBIT "C"**

*Gutman, Mintz, Baker & Sonnenfeldt, P.C.*

ATTORNEYS AT LAW
813 JERICHO TURNPIKE
NEW HYDE PARK, NY 11040

(516) 775-7007 • FAX: (516) 775-7052

February 4, 2005

Jennifer Lupo
77 Bleeker Street, Apt. 112
New York, NY 10012

Re:   Park City, LLC
v.  William Lupo/Deceased
85 Livingston Street, Apt. 8E
Brooklyn, NY  11201

Dear Ms. Lupo:

Gutman, Mintz, Baker & Sonnenfeldt, P.C. represents Park City, LLC, the landlord of the above-captioned premises.  This office received information that William Lupo was the tenant of record until his recent passing.  Please accept our condolences on your loss.

Management has requested that we contact you as although the apartment has been surrendered, the landlord has yet to recover the rental arrears in the amount of $3,889.44 due from the Estate of William Lupo and/or his next-of-kin.  Please make arrangements to remit the arrears to the Management Company, Penson Corporation at 915 East 179th Street, Bronx, NY  10460 within ten (10) days of receipt of this Notice.  In the event you are unable to remit the full amount within that time, you must contact management at (718) 562-2000 to arrange for payment of the arrears.  Failure to pay the arrears will result in legal action against the Estate of William Lupo and/or you as next-of-kin.  Hopefully that will not be necessary.  Management looks forward to working with you in order to resolve this issue as quickly as possible.

Thank you very much for your anticipated cooperation.

Very truly yours,

Donna L. Denton, Esq.

DLD:jm
VIA REGULAR & CERTIFIED MAIL
70041350000483576720
cc:  Penson Corporation

jdd0203051

*Gutman, Mintz, Baker & Sonnenfeldt, P.C.*
ATTORNEYS AT LAW
813 JERICHO TURNPIKE
NEW HYDE PARK, NY 11040-4609

7004 1350 0000 0351 7520



CERTIFIED MAIL

UNITED STATES POSTAGE
PITNEY BOWES
02 1A
0004335045      FEB 08 2005
MAILED FROM ZIP CODE 11040
$ 02.67

10012 1548 07

*Gutman, Mintz, Baker & Sonnenfeldt, P.C.*

ATTORNEYS AT LAW
813 JERICHO TURNPIKE
NEW HYDE PARK, NY 11040

(516) 775-7007 • FAX: (516) 775-7052

February 4, 2005

Jennifer Lupo
77 Bleeker Street, Apt. 112
New York, NY  10012

             Re:   Park City, LLC
                  v.  William Lupo/Deceased
                  85 Livingston Street, Apt. 8E
                  Brooklyn, NY  11201

Dear Ms. Lupo:

    Gutman, Mintz, Baker & Sonnenfeldt, P.C. represents Park City,  LLC, the landlord of the above-captioned premises.  This office received information that William Lupo was the tenant of record until his recent passing.  Please accept our condolences on your loss.

    Management has requested that we contact you as although the apartment has been surrendered, the landlord has yet to recover the rental arrears in the amount of $3,889.44 due from the Estate of William Lupo and/or his next-of-kin.  Please make arrangements to remit the arrears to the Management Company, Penson Corporation at 915 East 179th Street, Bronx, NY  10460 within ten (10) days of receipt of this Notice.  In the event you are unable to remit the full amount within that time, you must contact management at (718) 562-2000 to arrange for payment of the arrears.  Failure to pay the arrears will result in legal action against the Estate of William Lupo and/or you as next-of-kin.  Hopefully that will not be necessary.  Management looks forward to working with you in order to resolve this issue as quickly as possible.

    Thank you very much for your anticipated cooperation.

                           Very truly yours,

                           Donna L. Denton, Esq.

DLD:jm
VIA REGULAR & CERTIFIED MAIL
7004135000483576720
cc:  Penson Corporation

jdd020305l

*Gutman, Mintz, Baker & Sonnenfeldt, P.C.*
ATTORNEYS AT LAW
813 JERICHO TURNPIKE
NEW HYDE PARK, NY 11040-4609



02 1A
0004335045   FEB 08 2005
MAILED FROM ZIP CODE 11040

10012+1548 07

**EXHIBIT "D"**

**VIA FACSIMILE ONLY**
**(516) 775-7052**

Gutman, Mintz, Baker & Sonnenfeldt P.C.
813 Jericho Tpke.
New Hyde Park, New York 11040

Att: Donna L. Denton, Esq.

RE: Park City, LLC
Tenant: William Lupo/Deceased
Premises:    85 Livingston Street #8E
Brooklyn, New York 11201

Dear Ms. Denton:

I am in receipt of your correspondence mailed to my residence with respect to the above referenced matter.

You are hereby put on notice that you, and your firm Gutman, Mintz, Baker & Sonnenfeldt P.C., are in violation of the Fair Debt Collection Practices Act, 15 USCA§§ 1692-1692o (hereinafter the "ACT") and the New York Code of Professional Responsibility (hereinafter the "CODE").

You and your firm, Gutman, Mintz, Baker & Sonnenfeldt P.C., are 'debt collectors' within the meaning of the ACT.  See generally 15 USCA §1692a sub (6). This means that you are required to comply with the ACT when attempting to collect a debt due on behalf of your client, Park City, LLC.

Your letter of February 4, 2005 clearly states that "[f]ailure to pay the arrears will result in legal action against the Estate of William Lupo <u>and/or you as next-of-kin</u>." Additionally, you reference the matter as Park City LLC v. William Lupo/Deceased as if to indicate that your client is a plaintiff and my father a defendant in litigation.

Section 1692d prohibits a debt collector from engaging in harassing, oppressive or abusive conduct in connection with the collection of a debt.  See generally <u>Whatley v. Universal Collection Bureau Inc</u>, 525 F. Supp 1204 (ND Ga. 1981); <u>Kleczy v. First</u>

[Lafayette Street No 967
New York, New York 10012

[P] 646-435-7815
[F] 212-658-9126

jlupo@lupolaw.com
www.lupolaw.com

provisions "with respect to any person"). I am a "person" within the meaning of the ACT who does not owe your client, Park City LLC, anything. Section 1692c(b) prohibits a debt collector from using intimidation as a method of coercing payment of a debt. See generally West v. Costen, 558 F. Supp 564 (WD Va. 1983) (communications to various relatives of debtors, including grandparents, uncle, sister, and daughter, violated statutory prohibition).(emphasis added). In your letter you threaten me with legal action for a debt that is not mine or my responsibility to pay. In my complaint I will plead that you are in violation of § 1692d of the ACT because  (1) your communication was to the debtor's daughter; (2) that the debtor had not expressly consented to the communication, that no court had expressly permitted the communication, and that the communication was not reasonably necessary to effectuate a post judgment judicial remedy; and  (3) the communication was not permitted under 15 U.S.C.A. § 1692b.

With regard to the CODE violation, DR 7-102(A)(5) states "[i]n the representation of a client a lawyer shall not knowingly make a false statement of law or fact." In your letter you state "In the event that you are unable to remit the full amount within that time, you must contact management at (718) 562-2000 to arrange for payment of the arrears. Failure to pay the arrears will result in legal action against the Estate of William Lupo and/or you as next-of-kin." Your client may have a claim against the estate of William Lupo. However, they most certainly do not have a claim against me under New York Law as his next-of-kin as you so state. Furthermore, it is highly unlikely that you have commenced litigation against the estate. You have misrepresented the New York Estate Powers and Trust Law, have misrepresented the situation by making it appear as if it is in litigation and, thus, have violated DR 7-102(A)(5).

Give me a reason why I should not immediately commence litigation against you, Gutman, Mintz, Baker & Sonnenfeldt P.C., and report you and your firm to the Grievance Committee.

You have until the end of business Thursday February 10, 2005 to respond to this correspondence.

Sincerely yours,

Jennifer Lupo, Esq.

**EXHIBIT "E"**

**FOR EDUCATIONAL USE ONLY**
1995 WL 704778 (E.D.N.Y.)

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
Teodoro TRAVIESO, Francisca Travieso, Gloria Valentin, Luz Travieso, Tikandas
Dudani, Shanti Dudani, and Sabrina Jones, on behalf of themselves and all
others similarly situated, Plaintiffs,
v.
GUTMAN, MINTZ, BAKER & SONNENFELDT, P.C.; Grenadier Realty Corp., Sea Park
West Houses, Inc., Sea Park East Houses, Inc., Bay Park One Company,
Defendants.
No. 94 CV 5756 (JBW).
Nov. 16, 1995.

John C. Gray, Brooklyn Legal Services Corp. B, Brooklyn, New York by Edward Josephson, Raun
Rasmussen, Alicia Glen, for plaintiffs.
D'Amato & Lynch, New York City by Lloyd J. Herman, for defendant Gutman, Mintz, Baker &
Sonnenfeldt, P.C.
Brody & Fabiani, New York City by John Fabiani, for defendants Grenadier Realty Corp., Bay Park One
Company.
Swerdlin & Hasid, New York City by Jack Hassid, for defendants Sea Park West Houses, Inc., Sea Park
East Houses, Inc.

*MEMORANDUM AND ORDER*

WEINSTEIN, Senior District Judge:
**\*1** Plaintiffs seek a declaratory judgment, injunctive relief and damages. They allege that defendants
have engaged in a pattern and practice of conduct in violation of the Fair Debt Collection Practices
Act, 15 U.S.C. §§ 1692, *et seq* ("FDCPA"), various provisions of the Housing Act, 42 USC §§ 1437 *et
seq.* ("Housing Act"), United States Department of Housing and Urban Development ("HUD")
regulations, and the New York Consumer Protection Act, General Business Law § 349.
Plaintiffs are residents of federally subsidized housing in Brooklyn. There are three classes of
defendants: (1) the corporations that own the buildings in which plaintiffs reside--Sea Park West
Houses, Inc. and Sea Park East Houses, Inc. (referred to collectively as "Sea Park") and Bay Park One
Company, a limited partnership, ("Bay Park"); (2) the realty company that serves as managing agent
for Sea Park and Bay Park--Grenadier Realty Corp. ("Grenadier"); and (3) the law firm that handles
New York City Housing Court litigation for Sea Park and Bay Park--Gutman, Mintz, Baker &
Sonnenfeldt, P.C., ("Gutman").
Sea Park is a wholly owned subsidiary of the New York State Urban Development Corporation; Bay
Park and Grenadier are private entities unrelated to New York State.
Defendants move to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), for failure to state a
claim and lack of subject matter jurisdiction. For the reasons set forth below, the motion is denied.
I. Applicable Statutes
A. *Fair Debt Collection Practices Act ("FDCPA")*
The FDCPA, codified at 15 U.S.C. § 1692, prohibits, among other things, the use of false or misleading
representations by debt collectors. 15 U.S.C. § 1692(e). Its "purpose ... is to eliminate abusive debt
collection practices...." 15 USC § 1692(e). The legislative history suggests a broad definition of such
practices and wide discretion in the courts to proscribe them:
"this bill prohibits in general terms any harassing, unfair, or deceptive collection practices, [enabling]
the courts, where appropriate, to proscribe other improper conduct which is not specifically
addressed ... the committee views this legislation as primarily self-enforcing; consumers who have
been subjected to collection abuses will be enforcing compliance."
Senate Report No. 95-382, 1977 U.S.Code. Cong. and Adm.News. Pg. 1695, 1698, 1699. *See also:* 15
U.S.C. § 1692 Congressional Findings and Declaration of Purpose). A private right of action for
persons subject to abusive debt collection practices is created. 15 U.S.C. § 1692(k).

B. *Federal Housing Law*
Defendants Sea Park and Bay Park participate in the HUD housing subsidy program under Section 236 of the National Housing Act.
Landlords who own Section 236 buildings are given mortgage interest reduction payments by the federal government. They are subject to HUD regulations and formulas which establish allowable rents, govern aspects of the landlord-tenant relationship, and place certain documentation requirements on tenants. *see* 12 U.S.C. § 1715z-1; 24 C.F.R. §§ 247.3 *et. seq.*
**\*2** Many of the tenants of Sea Park and Bay Park participate in the federal Rent Supplement program, which provides for rent subsidy payments to landlords, who in turn must abide by HUD regulations. *See* 12 U.S.C. § 1701s; 24 C.F.R. §§ 215 *et seq.* Rent that can be charged to tenants in Section 236 buildings (calculated as a percentage of the tenants' income) is limited, provided that tenants have complied with the annual requirements that they certify their income and family composition. 42 U.S.C. § 1437a; 24 C.F.R. § 247.
Under both the statutory scheme for the Rent Supplement Program and Section 236, the tenant's failure to recertify allows the landlord to charge market-level rent. The Housing Act prohibits the eviction of federally subsidized housing tenants (including Section 236 tenants), except for "good cause." 12 U.S.C. § 1715z-1b(b)(3), and 42 U.S.C. § 1437f(d)(1)(B).
C. *New York Consumer Protection Law*
The New York consumer protection statute, codified in the General Business Law ("GBL") at §§ 349 *et seq.,* makes unlawful, *inter alia,* "[d]eceptive acts or practices in the conduct of any business ... or in the furnishing of any service." GBL § 349(a). It provides for a private right of action to "any person who has been injured by reason of any violation of this section." GBL § 349(h).
II. Facts
Plaintiffs allege that defendants, as a practice, make rent demands and other charges in excess of that permitted by the federal housing law, charge tenants unauthorized fees, and commence unlawful eviction proceedings in the New York City Housing Court to collect rent not actually due. They also charge that defendants charged market-level rent despite plaintiffs having timely certified their right to reduced rents.
As a result of defendants' practices, plaintiffs allege that they are forced to appear repeatedly in New York City Housing Court to defend baseless claims. Although the plaintiffs are vindicated in Housing Court, the defendants allegedly continue to commence baseless eviction proceedings, add unlawful fees and charges, and otherwise harass these tenants.
For example, Sea Park residents Teodoro Travieso and Francisca Travieso were allegedly sued in New York City Housing Court by defendants five times during a fifteen month period, despite their having timely paid their rent throughout this period. In three of the Housing Court proceedings, defendants allegedly sued the Traviesos for rent arrears that had explicitly been waived in prior court proceedings. It is claimed that they were being charged unlawful fees and charges for failure to recertify, despite the fact that they had timely certified. In another example Tikandas Dudani and Shanti Dudani allegedly received false rent bills, unlawful charges and fees, and false notices of summary eviction proceedings on a continuous basis.
In short plaintiffs' allege a pattern of tenants being routinely harassed and hauled into Housing Court on claims which are baseless to collect rent which has already been paid or to collect charges not authorized by HUD or federal housing law. They contend that for economic reasons or convenience, defendants have established a careless system of dealing with tenants which has the effect of violating HUD regulations, federal housing laws and the New York Consumer Protection Law.
III. Plaintiffs' Claims
**\*3** Plaintiffs' complaint sets forth nine claims:
First--the actions of Gutman and Grenadier violate the FDCPA.
Second--Gutman, Bay Park Sea Park and Grenadier violate General Business Law § 349 by sending plaintiffs false and misleading termination notices and commencing unwarranted eviction proceedings.

Third--Bay Park, Sea Park and Grenadier violate GBL § 349 by sending plaintiffs false and misleading rent bills.
Fourth--Bay Park, Sea Park and Grenadier violate the Housing Act and HUD regulations by terminating plaintiffs' tenancies without good cause.
Fifth--Bay Park, Sea Park and Grenadier violate the Housing Act and HUD regulations by collecting excess rent in violation of federal law.
Sixth--Bay Park, Sea Park and Grenadier violate HUD regulations by attempting to collect

unauthorized fees.

Seventh--Bay Park, Sea Park and Grenadier violate HUD regulations by attempting to obtain possessory judgments for late fees and other charges that may not form the basis for an eviction.

Eighth--Bay Park, Sea Park and Grenadier violate HUD contracts, to which plaintiffs were third-party beneficiaries.

Ninth--Bay Park, Sea Park and Grenadier violated tenant leases unlawfully terminating tenancies and attempting to collect unauthorized charges and fees.

IV. Motion to Dismiss

A complaint may not be dismissed for failure to state a claim unless plaintiff can prove no set of facts supporting relief. _Conley v. Gibson,_ 355 U.S. 41, 45 (1957). All factual allegations in the complaint must be taken as true and construed favorably to the plaintiff. _LaBounty v. Adler,_ 933 F.2d 121, 123 (2d Cir.1991).

Plaintiffs' ninth claim alleging violation of tenant leases, may be barred by the doctrine of _res judicata_ based on prior housing court proceedings. This issue may be raised at time of trial or by motion for summary judgment.

A. _FDCPA_

1. Claims against Gutman

Gutman argues that plaintiffs have failed to state a cause of action for violation of the FDCPA. The firm posits an interesting argument that to apply the FDCPA against a law firm engaged in litigation in housing court would essentially preempt New York's Real Property Actions and Proceedings Law ("RPAPL") a result never intended by Congress in enacting the FDCPA.

The recent Supreme Court case, _Heintz v. Jenkins,_ 514 U.S. 291, 115 S.Ct. 1489 (1995), held that the FDCPA applied to attorneys engaged in litigation. Moreover, rent clearly fits the definition of debt embodied in the FDCPA. _See Emanuel v. American Credit Exchange,_ 870 F.2d 805 (2d Cir.1989) (assumes rent is a debt within the meaning of the FDCPA).

_Heintz_ held that lawyers engaged in litigation can be debt collectors within the meaning of the FDCPA. It brushed aside potential conflict between the FDCPA and other aspects of litigation practice. _Heintz,_ 115 S.Ct at 1491.

If there was an equivalent to Rule 11 of the Federal Rules of Civil Procedure in New York Housing Court, some of the actions allegedly commenced by Gutman might be subject to sanctions. There is apparently no such remedy, yet these plaintiffs allege that they are routinely sued in housing court based on false information by lawyers who do not check their facts before serving their summary petitions. Plaintiffs assert that they are routinely subjected to precisely the sorts of practices that Congress prohibited by the FDCPA.

*4 Gutman's argument that the FDCPA is in conflict with the RPAPL centers around the thirty day "debt validation" provision of the FDCPA. 15 U.S.C. § 1692(g). This provision provides a safe harbor within which a consumer, having been apprised by the debt collector of a debt owed, may dispute the validity of such debt. The consumer has thirty days to make such objection, and the debt collector may not contact the debtor during this time. Defendants argue that the RPAPL framework for Housing Court litigation, requiring a demand letter and then notice of petition, could resolve an entire rent dispute within twenty days. This might, it is argued, be construed to create a conflict between FDCPA § 1692(g) and the RPAPL since the Housing Court could conceivably dispose of a case in its entirety before the thirty day period has expired.

The quick resolution of disputes under the RPAPL framework satisfies the essence of the FDCPA protection of debtors. In any event, plaintiffs do not assert that in Housing Court matters they are entitled to the thirty day debt validation provision of the FDCPA. Plaintiffs consent to the resolution of landlord-tenant disputes as set forth in the RPAPL. Plaintiffs seek only to apply the FDCPA prohibitions against false and misleading representations. They wish to be protected from false rent bills, baseless summary petitions, and unlawful charges, not from the quick judicial resolution of the disputes in Housing Court.

It is true that once the tenant and landlord is in Housing Court, the issues are resolved--indeed the cases against these Plaintiffs appear to have always been resolved in the their favor in Housing Court. The plaintiffs wish to not be forced to continuously litigate disputes in Housing Court that are baseless, or that entail unlawful fees. The FDCPA is intended to protect persons, such as plaintiffs, from abusive debt collection practices at the earliest stage. Once the dispute reaches the courts, the purposes behind the FDCPA are moot.

Plaintiffs have stated a claim against Gutman for violations of the FDCPA.

Interestingly, § 1692(n) of the FDCPA, entitled "Relation to State Laws," provides that "[t]his chapter

does not annul, alter, or affect" compliance with state debt collection law "except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency." However, the parties have not addressed to what extent, if any, this provision is determinative of the issues here.

### 2. Claims against Grenadier

Grenadier is a debt collector for purposes of the FDCPA. 15 U.S.C. § 1692a(6). It regularly collects rent payments and arrears ("debts" for purposes of the statute) from tenants. Although the FDCPA excludes from liability debt collectors acting "incidental to a *bona fide* fiduciary obligation or *bona fide* escrow arrangement," § 1692(a)(6)(g). Grenadier does not fit within this exception. If, as the Supreme Court stated in *Heintz,* attorneys are not exempt from the FDCPA, then surely Grenadier, which arguably has a weaker fiduciary relationship to the owners of the buildings than the owner's lawyers, is not exempt.

### B. *Federal Housing Laws*

**\*5** Plaintiffs allege that the actions of Bay Park, Sea Park and Grenadier, violate rights and privileges afforded to plaintiffs by the Housing Act, enabling statutes and HUD regulations. They seek to enforce these rights pursuant to 42 U.S.C. § 1983.

### 1. Claims Against Bay Park

In order for liability to attach under § 1983, a defendant must act "under color of state law" when he or she deprives persons of their rights under the Constitution and laws of the United States. Assuming this threshold requirement is satisfied, Plaintiffs' allegations would adequately state a claim to enforce rights created by federal housing statutes and HUD regulations against Bay Park. See *Wright v. City of Roanoke Redevelopment and Housing Authority,* 479 U.S. 418 (1987); *Beckham v. New York City Housing Authority,* 755 F.2d 1074 (2d Cir.1985). *Wright* allowed suits by tenants of federally subsidized buildings to enforce the Brooke Amendment to the Housing Act. In *Wright* the owner of the subsidized housing was the municipal redevelopment and housing authority, whereas Bay Park here is a private corporation.

Bay Park alleges that it is not a "state actor" for purposes of § 1983 jurisprudence and therefore cannot be liable under that statute. The leading case which Bay Park cites in support of its argument, *Blum v. Yaretsky,* 457 U.S. 991 (1982), deals with the problem of defining state action for purposes of the Fourteenth Amendment.

In *Blum,* plaintiffs were patients of a nursing home in New York City and participated in the federal Medicaid program. The Medicaid statute and its enabling regulations required nursing homes receiving medicaid funds to establish a review committee made up of physicians, in order to make determinations about patients' appropriate level of care--if patients should be discharged or transferred to a different level of care. The nursing home's review committee determined that the plaintiffs should be transferred to a lower level of care. New York City officials responsible for administration of medicaid funds notified the plaintiffs that their benefits would be discontinued unless they transferred to a lower level of care. Plaintiffs sued the New York City medicaid officials, arguing that the procedures by which their status within the nursing home was downgraded violated the Fourteenth Amendment to the United States Constitution. The question was whether the State was responsible for the specific conduct of the nursing home of which the plaintiffs complained. *Blum,* 457 U.S. 991, 1004. The Court answered in the negative. Thus the State did not deprive plaintiffs of their Fourteenth Amendment Due Process rights.

Bay Park also cites *Rendell-Baker v. Kohn,* 457 U.S. 830 (1982), where teachers at a private school commenced a § 1983 action based on retaliatory discharge for exercise of First Amendment rights. The court held that the school was not acting "under color of state law" when it discharged the teachers.

**\*6** The *Blum* and *Rendell-Baker* cases present a serious issue as to the viability of a § 1983 claim against Bay Park. However, as noted below, Sea Park is concededly a state actor, although it may have other defenses to § 1983 claims. At oral argument [transcript p. 44], plaintiffs' counsel asserted that Bay Park and Sea Park operate identically. To dismiss § 1983 claims against Bay Park but permit them against Sea Park, when both can be construed on the pleadings to be operating in concert, might create an anomalous result.

The motion to dismiss claims against Bay Park may not be granted at this time, but these claims may be challenged at trial or by motion for summary judgment.

### 2. Claims Against Sea Park

Sea Park does not challenge the assertion that the Sea Park entities are "state actors" for purposes of 42 U.S.C. § 1983. The Sea Park defendants argue that they are an "arm of the state" and therefore

immune from a claim under 42 U.S.C. § 1983 based on the sovereign immunity principals of the 11th amendment. *See: Will v. Michigan Dept. of Police,* 491 U.S. 58 (1989); *Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities,* 64 F.3d 810, 1995 WL 527830 (2d Cir.1995).

Plaintiffs requested and were granted, leave to amend the complaint to name the appropriate Sea Park officers as defendants in their individual capacities. The filing of a formal amended complaint is not necessary for purposes of this motion. The plaintiffs state a claim against the Sea Park officers. It is difficult to see why Sea Park should be characterized as an "arm of the state" for Eleventh Amendment purposes merely because it is a subsidiary of the Urban Development Corporation. Defendants' argument would extend the principals of Eleventh Amendment immunity beyond the holding of *Komlosi,* the recent second circuit statement on the topic which noted:

"[i]t is now well settled that a state cannot be sued under § 1983, *Will v. Michigan Dept. of Police,* 491 U.S. 58 (1989), and that this rule applies "to States or government entities that are considered 'arms of the state' for Eleventh Amendment purposes. For Eleventh Amendment purposes, the OMRDD is to be considered an arm of the State of New York. See N.Y. Mental Hyg.Law § 13.01."

The OMRDD is an agency of the State of New York and is governed and staffed by officials and employees of the government of the State of New York. A judgment creditor of the OMRDD would look to the State of New York for ultimate satisfaction of its judgment, a decisive factor in determining if an entity is an "arm of the state." *Edelman v. Jordan,* 415 U.S. 651, 653 (1974)

Merely obtaining money from the State of New York does not confer Eleventh Amendment immunity. *Fay v. South Colonie Central School District,* 802 F.2d 21, 27 (2d Cir.1986). It seems unlikely that Sea Park, whose employees are not controlled or paid by the State, is immune under the Eleventh Amendment. This issue may be raised at trial or on motion for summary judgment.

### 3. Claims Against Grenadier

**\*7** It appears difficult to justify characterizing Grenadier as a "state actor" for 42 U.S.C. § 1983 claim. Plaintiffs have alleged, however, that Grenadier executes the decisions of Sea Park in terms of the daily administration and adjustment of the federal subsidies at issue. The aura of "state actor" possibly emanating from Sea Park may inure to Grenadier, making it liable under § 1983.

This matter need not be decided since Grenadier would be a proper party under the FDCPA and New York Consumer Protection Law.

### C. *New York Consumer Protection Law*

#### 1. Claims Against All Defendants

General Business Law § 349(a) protects against deceptive practices, it provides:

Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful

The leading case on GBL § 349 is *Oswego Laborers' v. Marine Midland Bank,* 85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995). It sets out a 3-factor test for determining consumer fraud: (1) a consumer oriented transaction; (2) deceptive acts by the defendant; and (3) injury caused by such deceptive acts. 623 N.Y.S.2d 532. Plaintiffs plead the elements necessary to state a claim under GBL § 349. Defendants argue that a landlord-tenant relation is contractual, not consumer oriented, and therefore not subject to the consumer protection laws. *Duell v. Condon,* 84 N.Y.2d 773, 647 N.E.2d 96, 622 N.Y.S.2d 891 (1995). New York courts, interpreting consumer protection statutes, do give tenants private rights of action against their landlords. *See, e.g. 23 Realty Asociates v. Teigman,* 624 N.Y.S.2d 155 (1st Dept.1995) (apartment dweller is consumer of housing, and may assert New York City consumer protection law); *Lozano v. Grunberg,* 195 A.D.2d 308, 600 N.Y.S.2d 43 (1st Dept.1993) (deceptive disposses notices for late rent payments violates GBL § 349); *Frazier v. Priest,* 534 N.Y.S.2d 846 (Jefferson Co.1988) (GBL § 349 applies to the landlord-tenant relationship).

Plaintiffs state a claim against Grenadier under GBL § 349. As the Court has jurisdiction over Grenadier based on the FDCPA, it exercises supplementary jurisdiction as to this GBL § 349 claim.

### V. Conclusion

The motion to dismiss is denied.

The Court suggests that mediation would be particularly appropriate here. The parties have not made sufficient effort to arrive at a voluntary solution of their ongoing dispute. A neutral third-party may assist them in assessing the procedures currently being used by defendants to protect plaintiffs from undue or inappropriate harassment, while protecting the valid interests of the defendants.

SO ORDERED

E.D.N.Y.,1995.

Travieso v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.

1995 WL 704778 (E.D.N.Y.)

### Motions, Pleadings and Filings (Back to top)

- 1:94CV05756 (Docket) (Dec. 15, 1994)

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.